SCOTT A. PENNER, CA Bar No. 253716
　ScottPenner@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
　NicolaPisano@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:   858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff
SECTION PARTNERS MANAGEMENT, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECTION PARTNERS MANAGEMENT, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EQUITYBEE, INC.; SECFI, INC.; SECFI SECURITIES, LLC; SERENGETI ASSET MANAGEMENT, LP; AND WOUTER WITVOET,<br><br>　　　　　Defendants. | Case No. _____<br><br>**SECTION PARTNERS MANAGEMENT, LLC'S COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Section Partners Management, LLC ("Plaintiff" or "SPM") files this Complaint for trade secret misappropriation against EquityBee, Inc. ("EquityBee"), SecFi, Inc. ("SecFi"), SecFi Securities, LLC ("SecFi Securities"), Serengeti Asset Management, LP ("Serengeti"), and Mr. Wouter Witvoet ("Witvoet") (each a "Defendant," and collectively the "Defendants"), and hereby alleges as follows:

**PARTIES**

1. Plaintiff SPM is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 525 University Avenue, Suite 24, Palo Alto, CA 94301.

2. On information and belief, Defendant EquityBee is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 955 Alma Street, Suite A, Palo Alto, CA 94301.

3. On information and belief, EquityBee is registered to do business in the state of California and may be served through its registered agent, C T Corporation System at 330 North Brand Boulevard, Suite 700, Glendale, CA 91203.

4. On information and belief, Defendant Secfi is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 615 Battery Street, Floor 6, San Francisco, CA 94111.

5. On information and belief, Secfi is registered to do business in the state of California and may be served through its registered agent, VCorp Agent Services, Inc. at 330 North Brand Boulevard, Suite 700, Glendale, CA 91203.

6. On information and belief, Defendant Secfi Securities is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 615 Battery Street, Floor 6, San Francisco, CA 94111.

7. On information and belief, Secfi Securities is registered to do business in the state of California and may be served through its registered agent, Nathaniel Piauwasdy at 615 Battery Street, Floor 6, San Francisco, CA 94111.

8. On information and belief, Defendant Serengeti is a limited partnership organized and

existing under the laws of the state of Delaware with its principal place of business at 632 Broadway, Suite 901, New York, NY 10012.

9. On information and belief, Serengeti is registered to do business in the state of New York and may be served at 1115 Broadway, 12th Floor, New York City, NY 10010.

10. On information and belief, Defendant Witvoet is an individual who is a domiciliary of the state of New York, residing at 150 West 56th Street, Apartment, 2812, New York City, NY 10019.

## JURISDICTION

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 as it presents claims arising under federal law, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA"), as well as related state-law claims that arise from the same transactions and occurrences as the claims arising under federal law. This Court has supplemental jurisdiction over such state-law claims.

12. This Court has general and specific personal jurisdiction over EquityBee, Secfi, and Secfi Securities because each of these Defendants: (i) is a legal entity registered to do business with the state of California and maintains an office within this District; (ii) maintains a designated agent for service of process in this district; (iii) is regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from services provided in California and in this District; and (iv) has committed acts of trade secret misappropriation within the state of California and this District.

13. This Court has specific personal jurisdiction over Serengeti and Witvoet under Federal Rule of Civil Procedure 4(k)(1)(a). Specifically, this Court can apply the long-arm statute of the state under which it sits, namely, California. California's long-arm statute provides for personal jurisdiction over non-domiciliaries who commit tortious acts within the state. *See* CAL. CIV. PROC. CODE § 410.10; *Rosenblatt v. Am. Cyanamid Co.*, 86 S. Ct. 1 (1965); *Nat'l Life of Fla. Corp. v. Superior Court*, 21 Cal. App. 3d 281, 287 (1971). Here, both Serengeti and Witvoet committed a tort, trade secret misappropriation, in California and thus are subject to the jurisdiction of this Court.

## VENUE

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because Defendants EquityBee, Secfi, and Secfi Securities are deemed to reside in this District and have regular and established places of business in this District. Additionally, all of the Defendants have committed acts

of trade secret misappropriation in this District.

**DIVISIONAL ASSIGNMENT**

15. Pursuant to Civ. L.R. 3-2(c), as a substantial portion of the events giving rising to the claims asserted hereunder occurred in San Francisco County, this action should properly be assigned to the San Francisco Division of the Northern District of California.

**FACTUAL BACKGROUND**

**A.   SPM's Business and Protection of Its Trade Secrets.**

16. SPM is a leading investment firm, specializing in providing financing for founders, executives, and shareholders of venture-backed technology companies to exercise stock options and generate liquidity in lieu of a sale.

17. In 2014, VSL Partners ("VSL"), a dba of Crowder Ventures Management, LLC ("CVM"), was founded by Dave Crowder, Robert Pitti, and Steve Gold.

18. Through its operation and expertise in the investment field, VSL recognized a need for financing secured by private securities in the private equity industry. Banks traditionally viewed private securities as too risky to be used as collateral for loans. Additionally, VSL believed that structuring its offering as a loan would be problematic for potential borrowers.

19. In 2014, VSL began exploring alternative deal structures for private security transactions that would not be categorized as a loan and would result in more favorable tax treatment for both the individual and the funder.

20. In order to address this gap in the market, VSL created a novel approach to monetizing private securities. VSL developed a new investment vehicle in which a private asset is leveraged to access capital, creating a separate security that is not technically a loan and provides substantial benefits for both asset holder and funder (the "Trade Secret").

21. The Trade Secret was developed after a significant investment of resources into researching and developing a deal structure to meet consumer needs while maintaining compliance with relevant tax and securities regulations.

22. By at least as early as September 18, 2014, VSL had sufficiently established the deal structure to draft a private financing agreement that set forth the mechanics of the transaction.

23. By February of 2015, VSL had funded several transactions utilizing the proprietary deal structure that embodied the Trade Secret.

24. VSL only disclosed the Trade Secret to third parties under executed Non-Disclosure Agreements ("NDAs") that required maintaining the confidentiality of the deal structure and documents related to the transaction.

25. In 2018, CVM changed its name to SPM, and thus, all of CVM's assets and liabilities are held by SPM, the Plaintiff in this action. As a result, SPM is the sole and exclusive owner of the Trade Secret and has the right to file suit to seek damages for any misappropriation thereof.

26. SPM takes great care to protect its confidential and proprietary information and trade secrets. SPM limits disclosure of the Trade Secret to only those with a need to know and only after an NDA has been signed.

27. Additionally, documents disclosing the Trade Secret, including pitch decks and draft agreements, display confidentiality markings.

28. Over the years, Mr. Pitti and Mr. Gold have been involved in other investment firms following their time at VSL. Since 2015, under contractual agreements with SPM, these individuals have been licensed to make, use, and commercially exploit the Trade Secret independent of the original VSL partnership. Mr. Pitti, while working at Liquid Capital Management ("LCM") and the now defunct Robertson Stephens Partners LLC ("RSP"), utilized the Trade Secret under those contractual agreements with SPM.

29. Other than the licenses granted to Mr. Pitti and Mr. Gold, SPM has given no other individuals or businesses a license to make use of or commercially exploit the Trade Secret.

**B.     Defendant Witvoet's Access to the Trade Secret.**

30. On information and belief, Witvoet was introduced to SPM's Trade Secret during his time at Disruptive Technology Advisers LLC ("Disruptive"). RSP entered into an agreement with Disruptive in order to raise money for an investment fund to pursue potential transactions.

31. On, or around, July 20, 2016, Disruptive entered into a non-disclosure agreement, pursuant to the parties' business relationship, in order to protect the confidentiality of any information and trade secrets disclosed.

32. On information and belief, as an employee of Disruptive, and therefore covered by the Disruptive NDA, Wivoet gained access to the Trade Secret, including the template and execution agreements, the transaction structure, and financial models.

33. On information and belief, subsequently, Witvoet left his employment with Disruptive but continued to work with RSP in his individual capacity and in affiliation with another investment firm.

34. On, or around, March 22, 2017, Witvoet signed an NDA directly with RSP on behalf of Whitefeet Capital Limited to work on a proposed financial deal that involved the Trade Secret.

35. On, or around, September 27, 2017, Witvoet signed a further NDA with RSP in his personal capacity to collaborate on a separate deal that also involved the Trade Secret.

36. On information and belief, as part of his work, Witvoet received access to the Trade Secrets under the respective NDAs.

### C. Misappropriation of the Trade Secret by Defendants Witvoet and EquityBee.

37. EquityBee provides investment services to employee stockholders to assist them in exercising stock options and liquidating equity prior to exit.

38. On October 1, 2020, an employee of LCM received a copy of EquityBee's "Private Financing Contract" (the "EquityBee Contract") via email from a prospective client of the business.

39. Upon receipt of the EquityBee Contract, LCM informed SPM of the correspondence and its suspicions that EquityBee received an unauthorized copy of SPM's proprietary contract, copied it, and was utilizing the Trade Secret.

40. The EquityBee Contract uses the same title, similar terminology and definitions, and nearly identical terms as SPM's, and its authorized licensees', standard agreement, resulting in a financing structure that employs the Trade Secret. Additionally, there is substantial overlap in the language of the agreements and the structure of and markings on the documents.

41. Based on these significant similarities, on information and belief, EquityBee's Contract was copied and modified from SPM's (and/or an authorized licensee's) template agreement and is the result of misappropriation of SPM's Trade Secret.

42. On information and belief, EquityBee gained unauthorized access to SPM's Trade Secret through communications with Mr. Witvoet, in direct contradiction of his confidentiality obligations

under three separate NDAs.

**D.     Misappropriation of the Trade Secret by Defendants Witvoet, Secfi, Secfi Securities, and Serengeti.**

43.     In or around 2017, on information and belief, Witvoet founded SecFi, Inc., a venture capital-backed FinTech firm providing equity planning, stock option financing, and wealth management advising services for start-up employees and executives.

44.     On information and belief, through its founder, Witvoet, Secfi had direct access to detailed information concerning the Trade Secret.

45.     On information and belief, Witvoet, in direct contradiction of his contractual obligations, disclosed and commercially exploited the Trade Secret through his firm Secfi.

46.     Secfi partners with its affiliate Secfi Securities and Serengeti to offer investment and hedge fund management services.

47.     On or around January 11, 2023, an employee of LCM was provided with an unsolicited copy of an executed version of Serengeti's "Private Securities Contract" (the "Serengeti Contract") via email from an involved party.

48.     LCM promptly informed SPM of its receiving the agreement and its suspicions that its Trade Secret was once again being used without authorization.

49.     The Serengeti Contract bears striking similarities to SPM's, and its authorized licensees', private financing contract, including similar terminology and definitions and nearly identical contract terms.  The Serengeti Contract structures its funding arrangement in the same manner as the Trade Secret. Additionally, there is substantial overlap in the language of the agreements, suggesting that Serengeti's agreement was copied and modified from SPM's, or an authorized licensee's, template agreement.

50.     Under the Serengeti Contract, Secfi and Secfi Securities are named beneficiaries for a portion of the advance payment to manage client funds.

51.     Upon information and belief, Mr. Witvoet disclosed the Trade Secret, in violation of his contractual obligations, to Secfi, Secfi Securities, and Serengeti, so that these Defendants could exploit the Trade Secret for their own commercial benefit.

# COUNT I:

## VIOLATION OF THE DEFEND TRADE SECRETS ACT (All Defendants)

52. The above paragraphs 1–51 are incorporated by reference as if fully restated herein.

53. The Trade Secret has actual and potential economic value by not being generally known, as having that information remain secret provides SPM with a distinct competitive advantage in the market for private stock options financing. As such, the Trade Secret meets the definition of a "trade secret" pursuant to 18 U.S.C. § 1839(3).

54. Witvoet misappropriated the Trade Secret within the meaning of 18 U.S.C. § 1839(5). Witvoet had reason to know that his knowledge of the Trade Secret was acquired under circumstances that gave rise to a duty to maintain the secrecy and limit the use of the Trade Secret.

55. Witvoet then surreptitiously converted the Trade Secret for the purpose of disclosing, using, and commercially exploiting the Trade Secret for his own benefit and for the benefit of his company, SecFi, and his business affiliates and partners, EquityBee, Secfi Securities, and Serengeti.

56. SPM did not consent to, license, or authorize Witvoet's further use of or disclosure of the Trade Secret.

57. EquityBee, Secfi, Secfi Securities, and Serengeti misappropriated SPM's trade secrets within the meaning of 18 U.S.C. § 1839(5). Specifically, these Defendants knew or had reason to know that the Trade Secret information Witvoet shared with them for their benefit was acquired by improper means. Additionally, these Defendants knew or had reason to know that Witvoet did not have the authority to share SPM's Trade Secret with them.

58. Defendants' conduct alleged herein violated the DTSA and resulted in damages to SPM.

59. SPM, as the owner of the Trade Secret that Defendants misappropriated, is entitled to bring a private civil action against Defendants for injunctive relief, for damages, and/or unjust enrichment resulting from Defendants' disclosure and/or use of SPM's Trade Secret. *See* 18 U.S.C. § 1836.

# COUNT II:

## VIOLATION OF CALIFORNIA'S UNIFORM TRADE SECRETS ACT (All Defendants)

60. The above paragraphs 1–51 are incorporated by reference as if fully restated herein.

61. SPM's novel private securities deal structure meets the definition of a "trade secret" under

the California Uniform Trade Secrets Act ("CUTSA").  *See* Cal. Civ. Code § 3426.1(d).  The Trade Secret provides economic value to SPM and is not generally known to third parties outside of SPM. Further, SPM exerts significant efforts to maintain the secrecy of the information.

62. As shown above, Defendants have made use of and commercially exploited the Trade Secret for their personal gain.  Each Defendant acquired the Trade Secret through improper means, either in direct contravention to a contractual obligation of non-disclosure or from an individual or entity that the Defendant knew or should have known did not have the authority to disclose the Trade Secret. Accordingly, the Defendants' possession and prior and continued use of the Trade Secret is a violation of CUTSA.

63. SPM seeks all available damages for the Defendants' misappropriation of its Trade Secret under CUTSA, which includes, but is not limited to, the actual loss SPM suffered as a result of the misappropriation and/or the Defendants' unjust enrichment from the misappropriation.  *See* Cal. Civ. Code § 3426.3(a).

64. Additionally, given the Defendants' financial benefit from use of the Trade Secret, SPM seeks an injunction to enjoin them from any further misappropriation.  *See* Cal. Civ. Code § 3426.2(a).

## COUNT III:
## CIVIL CONSPIRACY (All Defendants)

65. The above paragraphs 1-51 are incorporated by reference as if fully restated herein.

66. Defendants were members of a common conspiracy.  The object of the conspiracy was to accomplish an unlawful purpose, namely, the misappropriation of SPM's Trade Secret.

67. Defendants had a meeting of the minds to engage in the course of action described above in order to compete unfairly with SPM.

68. As described above, Defendants committed the overt actions of misappropriation.

69. SPM suffered actual damages as a proximate result of Defendants' conduct.  Moreover, conspirators are held jointly and severally liable for all acts done by them in furtherance of their unlawful combination.

## COUNT IV:

## BREACH OF CONTRACT (Defendant Witvoet)

70. The above paragraphs 1-51 are incorporated by reference as if fully restated herein.

71. Witvoet agreed, among other things, to be bound by the non-disclosure agreement with RSP, including a prohibition on use or disclosure of any of proprietary business information or trade secrets.

72. Witvoet breached his non-disclosure obligations by converting the Trade Secret for his own use and benefit, and for the benefit of his company, Secfi, and its business associates.

73. As the licensor of the Trade Secret, SPM is a third-party beneficiary to the NDA signed by Witvoet with RSP and thus may enforce the confidentiality and non-disclosure provisions of said agreement. *See* CAL. CIV. CODE § 1559; *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 826-32 (2019). The NDA was entered into expressly for the purposes of protecting trade secrets held and/or used under license by Mr. Pitti while working at RSP, which includes the Trade Secret. Thus, VSL, and SPM as its successor-in-interest, was an intended beneficiary of the contracts, and SPM's enforcement of the terms of the NDA is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

74. Witvoet's breach of his contractual obligations to RSP have damaged and will continue to damage SPM, as a third-party beneficiary to the operative NDA. Witvoet is liable to SPM for all such damages.

75. As a direct and proximate result of Witvoet's breach of his contractual obligations to RSP, SPM, as a third-party beneficiary, has suffered and will continue to suffer damage for which SPM possesses no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendants as follows:

(a) For compensatory damages against Defendants according to proof;

(b) For disgorgement of any profits made by Defendants as a result of the misappropriation of Plaintiff's Trade Secret;

(c) For a temporary restraining order and preliminary and permanent injunctions against

Defendants to prevent further disclosure and use of Plaintiff's trade secrets;

    (d)    For punitive and exemplary damages against Defendants according to proof;

    (e)    For costs of suit against Defendants;

    (f)    For reasonable attorneys' fees against Defendants;

    (g)    Award of all damages together with pre-judgment and post-judgment interest; and

    (h)    Award of all other and further relief as the Court may deem just and proper.

## JURY DEMAND

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  September 29, 2023        Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Scott A. Penner*
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:        858.252.6502
FACSIMILE:  858.252.6503

Attorneys for Plaintiff
SECTION PARTNERS MANAGEMENT, LLC

49319445.2

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Executed on:  September 29, 2023

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Scott A. Penner*
SCOTT A. PENNER, CA Bar No. 253716
ScottPenner@eversheds-sutherland.com

Attorneys for Plaintiff
SECTION PARTNERS MANAGEMENT, LLC