David C. Codell, Esq. (State Bar No. 200965)
dcodell@tocounsel.com
Maryam Arshad, Esq. (State Bar No. 329265)
marshad@tocounsel.com
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

William H. Wenke (CA Bar No. 281031)
william@equitybee.com
General Counsel
EquityBee, Inc.
955 Alma Street, Suite A
Palo Alto, California 94301
Telephone: (650) 847-1149

Attorneys for EQUITYBEE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SECTION PARTNERS MANAGEMENT, LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>EQUITYBEE, INC.; SECFI, INC.; SECFI SECURITIES, LLC; SERENGETI ASSET MANAGEMENT, LP; AND WOUTER WITVOET,<br><br>        Defendants. | Case No. 3:23-cv-05030-VC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        June 27, 2024<br>Time:        10:00 a.m.<br>Crtrm.:      4<br>Judge:       Hon. Vince Chhabria<br><br>Trial Date:  August 25, 2025 |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on June 27, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant EquityBee, Inc. will move the court to dismiss this action with prejudice pursuant to Federal Rules of Procedure, Rule 12(b)(6). EquityBee makes this motion on the basis that the First Amended Complaint ("FAC") of Plaintiff Section Partners Management, Inc. ("SPM") has failed to state a claim for trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836) and the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426.3). In particular, SPM's FAC fails to allege a trade secret as defined by federal and California law. In addition, SPM's FAC fails to allege misappropriation or damages under federal and California law.

The motion will be based on this Notice of Motion and Motion and the Memorandum of Points and Authorities filed herewith, and the pleadings and papers already on file, and upon such further evidence and testimony as the court may allow at the hearing of this matter.

DATED:  May 17, 2024            THEODORA ORINGHER PC

By: _____
       David C. Codell
       Maryam Arshad

       William H. Wenke

       Attorneys for Defendant EQUITYBEE, INC.

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  FACTUAL ALLEGATIONS ........................................................................................2

III.  LEGAL STANDARDS ...................................................................................................3

    A.  Rule 12(b)(6)..........................................................................................................3

    B.  Trade Secret Misappropriation ..............................................................................4

IV.  ARGUMENT ...................................................................................................................6

    A.  The FAC Fails to Allege that SPM's Investment Vehicle Is a Trade Secret...........6

        1.  Variable Prepaid Forward Contract ............................................................6

        2.  ██████████████ ....................................................................9

        3.  ████████████████ ...........................................................10

        4.  ███████████ ......................................................................10

        5.  ████████ ............................................................................12

        6.  ██████████████████████ ..........................................12

        7.  ████████████████ ...........................................................12

        8.  ████████████████████ .................................................13

        9.  █████████ ..........................................................................13

        10.  ████████ ............................................................................14

        11.  The FAC's Combination of Each of Publicly Known Terms Is Not Sufficiently Novel to Constitute a Valid Trade Secret. ..............................14

    B.  The FAC Fails to Allege Misappropriation or Damages .......................................15

V.  CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) ................................................................. 3, 4

*Anschutz Co. v. Comm'r*,
664 F.3d 313 (10th Cir. 2011) ........................................................................ passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 3

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) ............................................................................... 3

*Cataphote Corp. v. Hudson*,
444 F.2d 1313 (5th Cir. 1971) ............................................................................... 6

*Cypress Semiconductor Corp. v. Superior Ct.*,
163 Cal. App. 4th 575 (2008) .............................................................................. 15

*Est. of McKelvey v. Comm'r of Internal Revenue*,
906 F.3d 26 (2d Cir. 2018)................................................................................... 10

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ............................................................................... 5

*In re Sotera Wireless, Inc.*,
591 B.R. 453 (S.D. Cal. 2018)............................................................................... 5

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ............................................................................. 4, 5

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ................................................................................. 3

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
420 F. Supp. 2d 1070 (N.D. Cal. 2006) ................................................................. 5

*Sargent Fletcher, Inc. v. Able Corp.*,
110 Cal. App. 4th 1658 (2003) .............................................................................. 4

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) ................................................................................. 4

ii

*Syngenta Crop Prot., Inc. v. Helliker*,
    138 Cal. App. 4th 1135 (2006) ................................................. 5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................. 4

*Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W,
    (BGS), 2021 WL 2826088 (S.D. Cal. July 7, 2021)................................. 9

**<u>Statutes</u>**

18 U.S.C. § 1836 .................................................................. 4

18 U.S.C. § 1839 ............................................................. 4, 5, 6

26 U.S.C. § 465 ................................................................. 12

California Civil Code § 3426.1 ............................................... 4, 5, 6

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(6) .................................... 1, 3, 4

Federal Rule of Evidence 201 .................................................... 5

**<u>Other Authorities</u>**

Lauren Foster, *Prepaid Variable Forwards: Hedging Risk and Deferring Taxes*, CFA Institute
    (Jan. 18, 2012), https://blogs.cfainstitute.org/ investor/2012/01/18/prepaid-variable-forwards-
    hedging-risk-and-deferring-taxes/................................................ 13

*Managing a Concentrated Equity Position*, Raymond James Financial Services, Inc. (2019),
    https://www.raymondjames.com/-/media/rj/common/advisor-site-pdfs/concentrated-
    equity.pdf. ...................................................................... 13

Chris Walton, *The Startup Guide to Simple Agreement for Future Equity Tax Treatment*, Eton
    Venture Services (Mar. 6, 2024), https://etonvs.com/startup-101/simple-agreement-for-future-
    equity-tax-treatment/......................................................... 11, 12

Dennis Craig, *What You Should Know About SAFEs*, Cooley Go (Feb. 20, 2023),
    https://www.cooleygo.com/what-you-should-know-about-safes/ ..................... 11

Olga Verchenko, *SAFEs – Understanding Triggering Events*, Buzko Krasnov (Oct. 29, 2023),
    https://www.buzko.legal/content-eng/safes-understanding-triggering-events ....... 11

**Treatises**

*Alan S. Gutterman and Leib Orlanski, § 11:161. In general,* 3 Cal. Transactions Forms--Bus.
   Entities § 11:162 (Oct. 2023) .................................................................................................. 11

*Dan Sheaffer, § 21A:6. Investment instruments traded on exchanges; futures, forward and
   Section 1256 contracts,*4 Mertens Law of Fed. Income Tax'n § 21A:6 (Mar. 2024) ............... 7

*I-1003.I Whether The Execution Or Extension Of A Prepaid Variable Forward Contract Is A
   Sale.,* Fed. Tax Coordinator (Apr. 2024) .................................................................................. 12

**Law Review Article**

Andrew Franklin Peterson, *Trade Secrets and Confidentiality: Attorney Ethics in the Silent
   World of Tax Planning,*
   17 BYU J. Pub. L. 163 (2002) ............................................................................................ 9, 14

**Administrative Decisions & Guidance**

Rev. Rul. 2003-7, 2003-1 C.B. 363 (2003).................................................................................. 12

Variable Prepaid Forward Contracts Incorporating Share Lending Arrangements, Uil: 1001.00-
   00, 2008 WL 852615 (I.R.S. Feb. 6, 2008) ............................................................................ 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

It is well established that a fundamental element of a trade secret is that it is not generally known by the public or the relevant industry—in other words, that it is indeed a secret. Plaintiff Section Partners Management, Inc. ("SPM") has taken the remarkable position that an investment vehicle qualifies as a trade secret even though it is essentially a type of a well-known investment vehicle—a variable prepaid forward contract ("VPFC").

SPM's First Amended Complaint alleges that SPM's investment vehicle, which it characterizes as a "new investment vehicle" and a "novel approach for monetizing a private security," is a trade secret and that Defendant EquityBee, Inc. ("EquityBee") misappropriated that trade secret under the federal Defend Trade Secrets Act and the California Uniform Trade Secrets Act. SPM does not allege that a *specific agreement with a specific counterparty or specific price* is the trade secret. Rather, SPM is seeking to classify ███████████████████████████ ████—all used and known in the finance industry—as its alleged trade secret.

Courts should be skeptical about granting trade secret status to template agreements in the finance industry—particularly where a template's primary incentive is to minimize or avoid tax liability. A VPFC is a type of futures contract by which a shareholder pledges a certain amount of shares to a buyer to be delivered at a future agreed-upon date in exchange for a cash advance. The structure of a VPFC not only provides financing secured on collateral, but also defers tax obligations until the future agreed-upon date. SPM alleges that its investment vehicle allows for tax obligations to be deferred, "result[ing] in more favorable tax treatment," and seeks trade secret protection for it, even referring to █████████████████████. (First Amended Complaint ["FAC"] ¶¶ 12-13, ECF 30.) As explained below, the IRS and courts have addressed VPFCs and their tax treatment. Courts should pause before treating as a ***secret*** a ***form*** of investment vehicle that is designed to limit taxes that might otherwise be payable to the ***public fisc***.

Moreover, SPM has not adequately alleged that EquityBee engaged in any misappropriation under California or federal law. Accordingly, EquityBee moves this Court to dismiss the FAC for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6).

Because amendment would be futile, EquityBee requests that the dismissal be with prejudice.

## II.   FACTUAL ALLEGATIONS[1]

Prior to 2018, SPM was known as Crowder Ventures Management, LLC ("CVM"). (FAC ¶ 18.) In 2014, CVM, doing business as VSL Partners ("VSL"), allegedly "developed a new investment vehicle in which a private asset is leveraged to access capital, creating a separate security that is not technically a loan and provides substantial benefits for both asset holder and funder (the 'Trade Secret')." (FAC ¶¶ 11-12.) Paragraph 13 of the FAC alleges that the Trade Secret[2] consists of ████████████████████████████████████████████. (FAC ¶ 13.) By February 2015, VSL had used this structure to fund several transactions. (FAC ¶ 15.) The FAC alleges that "VSL only disclosed the Trade Secret to third parties under executed Non-Disclosure Agreements ('NDAs') that required maintaining the confidentiality of the deal structure and documents related to the transaction." (FAC ¶ 17.) The FAC alleges that SPM shared the Trade Secret only under confidentiality terms. (FAC ¶¶ 19-21.)

One of VSL's founders, Robert Pitti, had a license to utilize the Trade Secret while working at other companies not related to VSL: Liquid Capital Management ("LCM") and the now defunct Robertson Stephens Partners LLC ("RSP"). (FAC ¶¶ 9, 21.) RSP entered into an agreement based on the Trade Secret with Disruptive Technology Advisors LLC ("Disruptive") as well as an NDA in or around July 20, 2016. (FAC ¶¶ 23-24.) SPM alleges that Wouter Witvoet ("Witvoet"),[3] who was at Disruptive in July 2016, entered into agreement with RSP based on the Trade Secret on or around March 2017 on behalf of another company, Whitefeet Capital Limited. (FAC ¶¶ 23, 27.)

The FAC alleges that "[o]n October 1, 2020, an employee of LCM received a copy of EquityBee's 'Private Financing Contract' (the 'EquityBee Contract') via email from a prospective client of the business" who also informed SPM of its "suspicions that EquityBee received an

---

[1] The Factual Allegations herein are taken from the FAC.

[2] EquityBee adopts SPM's usage of the term "Trade Secret" as alleged in paragraphs 12 and 13 of the FAC only for purposes of this Motion. EquityBee disputes that the alleged Trade Secret is actually a trade secret under governing California and federal law.

[3] Witvoet (the alleged NDA violator) was named as a Defendant in this litigation; however, SPM dismissed him without prejudice on March 4, 2024. (Not. of Dismissal, ECF 19.)

unauthorized copy" of a contract based on SPM's Trade Secret and copied it. (FAC ¶¶ 31-32.) The FAC alleges that the EquityBee Contract "was copied and modified from SPM's (and/or an authorized licensee's) template agreement" because it "uses the same title, similar terminology and definitions, and nearly identical terms" that SPM uses in its agreements based on its alleged Trade Secret. (FAC ¶¶ 33-34.)

SPM alleges that Witvoet supplied the agreement to EquityBee in contradiction of Witvoet's obligations under three separate NDAs. (FAC ¶ 35.) SPM does not allege that EquityBee entered into any NDA or violated any NDA. (*See generally* FAC.)

On September 29, 2023, SPM filed its Complaint in this case alleging that EquityBee and four other Defendants (including Witvoet) misappropriated SPM's Trade Secret under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). On March 4, 2024, SPM dismissed without prejudice all Defendants except EquityBee. (Not. Of Dismissal, ECF 19.) On April 19, 2024, SPM filed its FAC alleging the same two causes of action solely against EquityBee. (*See generally* FAC.) SPM filed its FAC along with a motion to seal portions of the FAC. (Pl.'s Admin. Mot. To File Under Seal, ECF 31.) This Court has not yet ruled on SPM's motion to seal. EquityBee accordingly files this Motion to Dismiss along with an administrative motion to seal portions of the Motion to Dismiss.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). For a complaint to survive a Rule 12(b)(6) motion, the allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must accept factual allegations in the complaint as true, it does not need to accept allegations as true when they are "contradicted by judicially noticeable facts." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 876 (N.D. Cal. 2018). A court may also look "'to matters of public record' without

*NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6)*

converting the Rule 12(b)(6) motion into a motion for summary judgment." *Id.* (citing *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995)).[4] Additionally, a court need not assume as true legal conclusions that are cast in the form of factual allegations. *Id.*

### B.  Trade Secret Misappropriation

"To succeed on a claim for misappropriation of trade secrets under the [federal] DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).[5] Under the CUTSA, a "prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003).[6] Courts examine DTSA and CUTSA claims together "because the

---

[4] A court "may take judicial notice on its own," Fed. R. Evid. 201(c)(1), of facts "not subject to reasonable dispute," Fed. R. Evid. 201(b), including because they are publicly known. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking "judicial notice of the fact that various newspapers, magazines, and books have published [relevant] information").

[5] *See* 18 U.S.C. § 1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.").

[6] California Civil Code § 3426.1(a)-(b) provides:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

*NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6)*

elements are substantially similar." *InteliClear*, 978 F.3d at 657.

Before deciding whether a defendant has misappropriated a trade secret, courts must first "identify [the plaintiff's] alleged trade secrets and decide if they are protectable." *InteliClear*, 978 F.3d at 655. Under the DTSA "the definition of trade secret consists of three elements: (1) information, (2) ***that is valuable because it is unknown to others***, and (3) that the owner has attempted to keep secret." *Id.* at 657–58 (citing to 18 U.S.C. §§ 1839(3), (5)) (emphasis added).

California law similarly defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that:"

> (1) Derives independent economic value, actual or potential, ***from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use***; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d) (emphasis added). To adequately plead ownership of a trade secret, the plaintiff "'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *InteliClear*, 978 F.3d at 658 (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998)) (emphasis in original). "Information that is readily ascertainable by a business competitor derives no independent value from not being generally known." *Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1172 (2006); *accord In re Sotera Wireless, Inc.*, 591 B.R. 453, 458 (S.D. Cal. 2018).

"Combinations of public information from a variety of different sources when combined in a novel way can be a trade secret . . . as long as the combination of all such information is not generally known." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089–

---

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

90 (N.D. Cal. 2006). Unlike patents, trade secrets are not officially determined; therefore, "they are attended by no presumptions and the burden of proof is on the plaintiff to prove not only that the idea used by the defendant is his but also that it involves some elements above ordinary mechanical commonality and is something not already known to the public and to the trade generally." *Cataphote Corp. v. Hudson*, 444 F.2d 1313, 1316–17 (5th Cir. 1971).

## IV.   ARGUMENT

### A.   The FAC Fails to Allege that SPM's Investment Vehicle Is a Trade Secret.

The FAC is fatally deficient because it fails to allege a defining element of a trade secret pursuant to either the DTSA or the CUTSA—that the trade secret is "not generally known to the public." Cal. Civ. Code § 3426.1; *see* 18 U.S.C. § 1839 (3)(B). Indeed, SPM *cannot* successfully allege that the Trade Secret is not generally known by those skilled in the finance industry.

The FAC describes the Trade Secret as "a new investment vehicle in which a private asset is leveraged to access capital, creating a separate security that is not technically a loan and provides substantial benefits for both asset holder and funder." (FAC ¶ 12.) However, the alleged Trade Secret terms as described by the FAC ███████████████████████████████████████████ ████████████████████████████████████████████████████████████ (FAC ¶ 13.)

### 1.   Variable Prepaid Forward Contract

A VPFC is a type of forward contract. *Anschutz Co. v. Comm'r*, 664 F.3d 313, 316 (10th Cir. 2011). Forward contracts generally refer to agreements under which the anticipated delivery of a commodity is on a future date. *Id.* VPFCs are often used where a shareholder "'owns stock that has appreciated significantly' but 'do[es] not want to sell [that] stock because the sale will trigger a tax liability.'" *Id.* (citation omitted). A VPFC can be described as follows:

- An agreement between a shareholder and an investor (e.g., an investment firm or bank) wherein the shareholder "pledges" a certain number of shares to the investor;

- The investor is granted a security interest in the pledged shares;

- In exchange for the security interest, the investor gives the shareholder an up-front cash payment for the future delivery of the stock, which generally represents a high percentage of the current fair market value of the stock.

- At a predetermined settlement date or maturity date, the shareholder delivers to the investor one of the following: the pledged shares, the cash value of the pledged shares on the settlement date, or the equivalent value in different shares.

*See Anschutz*, 664 F.3d at 316; *Variable Prepaid Forward Contracts Incorporating Share Lending Arrangements*, Uil: 1001.00-00, 2008 WL 852615 at *1 (I.R.S. Feb. 6, 2008) [hereinafter, "IRS Paper"]; Dan Sheaffer, *§ 21A:6. Investment instruments traded on exchanges; futures, forward and Section 1256 contracts*, 4 Mertens Law of Fed. Income Tax'n § 21A:6 (Mar. 2024). One of "[t]he purported economic benefits of the VPFC . . . [is] tax deferral of the gain to the maturity date of the VPFC." IRS Paper, 2008 WL 852615 at *1. As discussed in detail below, the terms and characteristics of the alleged Trade Secret bear a striking resemblance to the well-known VPFC or are otherwise widely known contracting terms.

The table below lists the terms and characteristics of the alleged Trade Secret and groups them into similar categories to avoid repetition of analysis. ███████████████████ ████████████████████





8

*NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6)*



**2.** ██████████████████████

The first characteristic of SPM's alleged Trade Secret is ████████████████████ (FAC ¶ 13.a..) This characteristic is  too generic to merit protection. While SPM may argue that this characteristic should be considered in combination with the other terms alleged, courts in this jurisdiction ████████████████████████████████████. *Cf. Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *6 (S.D. Cal. July 7, 2021) (finding that allegations of ████████████████████████ did not satisfy trade secret pleading requirements). Furthermore, the ethical and legal implications of providing trade secret protection to tax-planning strategies including "a wide variety of investment vehicles" weighs against its application here. *See* Andrew Franklin Peterson, *Trade Secrets and Confidentiality: Attorney Ethics in the Silent World of Tax Planning*, 17 BYU J. Pub. L. 163, 167 (2002).

> Notably, tax-planning strategies necessarily involve principles generally known in the financial and estate planning industries. For example, trust, gifts, business entities, tax deferral mechanisms, a wide variety of investment vehicles, and so on constitute the basic grammar of tax planning. ***Anyone initiated into the world of tax planning knows the basic principles of these mechanisms, which work and must be understood within the context of the Internal Revenue Code***.

*Id*. (emphasis added). In fact, much of the financial industry itself opposes trade secret protection of investment vehicles, and new investment vehicles and financing options are often publicized by originators.[7] Accordingly, even considered with other characteristics, the alleged Trade Secret's

---

[7] *See, e.g.,* Paul Graham, *Announcing the Safe, a Replacement for Convertible Notes*, Y Combinator (Dec. 6, 2013), https://www.ycombinator.com/blog/announcing-the-safe-a-replacement-for-convertible-notes/ (publicizing a simple agreements for future equity ("SAFE") as a mechanism to use stock holdings to raise funds for start-ups).

description ███████████████████ says nothing or little as to whether it is a trade secret.

      **3.**    ████████████████████

      The FAC describes these characteristics in ██████████████████ These characteristics are ████████████████████ In a VPFC, pledged shares secure an up-front cash payment of a discounted value of the shares. *See Anschutz Co.*, 664 F.3d at 316; *see also Est. of McKelvey v. Comm'r of Internal Revenue*, 906 F.3d 26, 27–28 (2d Cir. 2018) ("The [investor] agrees to pay the shareholder a substantial sum of money equal to the value of the stock discounted to present value. . . . The [shareholder] also agrees to secure its delivery obligation with the maximum number of shares to be delivered at settlement."). In a Coordinated Issue Paper, the IRS defined a VPFC in the context of considering when certain VPFCs that incorporate share lending should be taxed. IRS Paper, 2008 WL 852615 at *1. Per the IRS, a shareholder in a VPFC "is required to deposit the maximum number of shares that may be delivered under the VPFC into a pledge account and to grant the counterparty a security interest in the pledged securities." *Id.* Consequently, ████████████████████████████████ ████████████████████████ and is information that is publicly available in official IRS documents and in a published Tenth Circuit opinion. *See Anschutz Co. v. Comm'r*, 664 F.3d at 316. There are also numerous public investment resources that also explain VPFCs.[8] The FAC fails to allege anything about the Trade Secret that is not widely known in the financial industry.

      **4.**    ████████████████

      The FAC states several characteristics of the Trade Secret that fall in this category— namely, that ████████████████████████████████████████████

---

[8] Numerous public sources describe a VPFC as a cash advance secured by pledged shares. *See, e.g.,* Will Kenton, *Variable prepaid forward contract overview*, Investopedia (2022), https://www.investopedia.com/terms/v/variable-prepaid-forward-contracts.asp#:~:text=A%20 variable%20prepaid%20forward%20contract,the%20stockholder%20collects%20the%20money (last visited May 9, 2024); Robert W. Wood, *Money Now, Taxes Later With Prepaid Forward Contracts*, Forbes (May 21, 2021), https://www.forbes.com/ sites/robertwood/2021/05/29/money-now-taxes-later-with-prepaid-forward-contracts/?sh= 1d57fd777f6d (last visited May 15, 2024); *Managing a Concentrated Equity Position*, Raymond James Financial Services, Inc. at p. 7 (2019), https://www.raymondjames.com/-/media/rj/common/advisor-site-pdfs/concentrated-equity.pdf.

████████████████████████ (FAC ¶¶ 13.c., 13.d., 13.h., 13.*l*.)

███████████████████████████████████████████████████████████████

██████████████████████████████████ A ██████████ is also a publicly known

term or characteristic for financing vehicles, one of which is called a simple agreement for future

equity ("SAFE"). "With a [VPFC], the buyer pays the seller up front rather than on the delivery

date, and a variable amount of property is transferred when the contract closes. A SAFE resembles

such a contract, as the investor purchases equity (with cash or services) under a contract specifying

a quantity of property to be delivered later, varying based on circumstances." Chris Walton, *The*

*Startup Guide to Simple Agreement for Future Equity Tax Treatment*, Eton Venture Services (Mar.

6, 2024), https://etonvs.com/startup-101/simple-agreement-for-future-equity-tax-treatment/. The

settlement date for SAFEs is █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████ Alan S. Gutterman and Leib Orlanski, *§ 11:161. In general*, 3 Cal. Transactions Forms-

-Bus. Entities § 11:162 (Oct. 2023); *see also* Dennis Craig, *What You Should Know About SAFEs*,

Cooley Go (Feb. 20, 2023), https://www.cooleygo.com/what-you-should-know-about-safes/

("SAFEs ████████████████████████████████████████████████████████

███████████████████████████); Olga Verchenko, *SAFEs – Understanding Triggering*

*Events*, Buzko Krasnov (Oct. 29, 2023), https://www.buzko.legal/content-eng/safes-

understanding-triggering-events ("SAFEs ████████████████████████████████

██████████████████████████████████████████████████).

    The FAC does not allege in sufficient particularity ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ is hardly a

*novel* combination of publicly known investment vehicle terms that would classify SPM's

investment vehicle as a trade secret. ██████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████. Indeed, because of the similar structure shared by SAFEs and VPFCs, they are often discussed together, particularly in the context of tax liability. *See, e.g.*, Walton, *supra*.

5.   █████████

SPM describes its alleged Trade Secret as █████████████████████████ ████████████████████ (FAC ¶ 13.e.) ██████████████████████████ ████████████████████████████████████████ █████████████████████████████████ Again, this is hardly a unique or secret term, especially in investing and financing. █████████ is so ubiquitous that it is regulated by the IRS. *See, e.g.,* 26 U.S.C. § 465█████ (defining █████ █████████████ in the context of tax deductions). ██████████████████ ████████████████████████████████████████ ███████████████████

6.   ████████████████████

SPM states its alleged Trade Secret includes ████████████████████ ████████████████████ (FAC ¶ 13.i.) ████████████████ ████████ in a VPFC, in which a shareholder is "required by the terms of the agreement to surrender the shares transferred to the trust and ha[s] the right to reacquire the shares by delivering cash or other shares." ¶ *I-1003.1 Whether The Execution Or Extension Of A Prepaid Variable Forward Contract Is A Sale.*, Fed. Tax Coordinator (Apr. 2024) [hereinafter "FTC ¶ *I-1003.1*"] (discussing Rev. Rul. 2003-7, 2003-1 C.B. 363 (2003); *see* IRS Paper, 2008 WL 852615 at *1 ("The VPFC usually has a cash settlement option in lieu of delivering the underlying shares at maturity."). ████ ████████████████████████

7.   ████████████████████

The FAC states that ██████████████████████████████ ████████████████████ (FAC ¶ 13.n.) ███████████████ a VPFC. In a VPFC, the shareholder "retain[s] the right to receive any dividends and exercise voting rights with respect to the shares." FTC ¶ *I-1003.1* (discussing Rev. Rul. 2003-7, 2003-1 C.B. 363 (2003)). In fact, ██████████████████████████████████████████████ the

*NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6)*

IRS deems that tax treatment different from a standard VPFC applies. IRS Paper, 2008 WL 852615 at \*1. ███████████████████████████████████████████████

**8.** ███████████████████████████

SPM alleges its investment vehicle includes ████████████████████████████████ ████████ (FAC ¶ 13.o.) █████████████████████████████████████ ████████ "At the maturity date of the VPFC, typically 'a number of years later, the shareholder delivers to the [counterparty] the specified number of pledged shares of stock based upon the price of the stock at the time and according to a formula' agreed upon by the shareholder and counterparty at the inception of the VPFC." *Anschutz Co.*, 664 F.3d at 316 (citation omitted). As the Tenth Circuit described in *Anschutz*, the value of the shares is unknown in a VPFC because it is based, at least in part, on the fair market value at settlement. *Id.* The share price could remain stagnant, drop precipitously, or soar past expectation. Therefore, in a VPFC, ████████████ ████████████████████████████████████████████████████

**9.** ███████████████

The FAC SPM alleges several terms related to ████████████████████████████. (FAC ¶¶ 13.f., 13.g., 13.j.) ███████████████████████████████████████████ ████████████ in VPFCs. For example, a VPFC "automatically builds ████████████████ ████████████████████████ *See* Lauren Foster, *Prepaid Variable Forwards: Hedging Risk and Deferring Taxes*, CFA Institute (Jan. 18, 2012), https://blogs.cfainstitute.org/ investor/2012/01/18/prepaid-variable-forwards-hedging-risk-and-deferring-taxes/.

Regarding ████████████████████████████████████████████ ████████████████████████████ in VPFCs ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ *Managing a Concentrated Equity Position*, Raymond James Financial Services, Inc., 7 (2019), https://www.raymondjames.com/-/media/rj/common/advisor-site-pdfs/concentrated-equity.pdf.

████████████████████████████████████████████████████ ████████████████████████████████████████████████████

████████ is not a novel enough change to consider the investment vehicle as a whole a trade secret.

Finally, the term described in subparagraph ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

      **10.**    ████████████

SPM cites as a secret characteristic of its investment vehicle that ████████████████

████████████████████████████████████ (FAC ¶ 13.k.) As an initial matter, ██████

████████████████████ cannot be a trade secret because it is dependent entirely on the Internal

Revenue Code and state tax laws. *See* Peterson, *supra*, 17 BYU J. Pub. L. at 163 (2002)

████████████████████████████ . . . become available and work only within the context

of the publicly accessible Internal Revenue Code . . . .”). ████████████████████████

████████████████████████████████████ are not trade secrets. In any event, one of the

key “economic benefits of the VPFC structure [is] . . . ████████████████████████████

of the VPFC.” IRS Paper, 2008 WL 852615 at *1.

      **11.**    **The FAC's Combination of Each of Publicly Known Terms Is Not Sufficiently Novel to Constitute a Valid Trade Secret.**

As discussed above, ████████████████████ alleged by SPM describing the purported

Trade Secret.████████████████████████████████████ . The remaining terms, ██████

████████████████████████████████████████ which is another generally

known and well publicized investment vehicle. ██████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████ SPM has alleged nothing about its investment vehicle that is not already a

well-known contract term. Nor does the FAC allege anything about ████████████ ████████████████████████████████████████████████

Moreover, given the public nature of each of the terms of the alleged Trade Secret, it would be futile for SPM to attempt to amend its pleading further. The Court should therefore dismiss the FAC with prejudice and without leave to amend.

**B.     The FAC Fails to Allege Misappropriation or Damages**

The FAC alleges no facts to support a claim that EquityBee wrongfully acquired or disclosed SPM's alleged Trade Secret or that SPM suffered damages. SPM rests its entire claim on SPM's alleged receipt of an EquityBee contract that has similar headings, terms, and language. (FAC ¶¶ 31-35.) The FAC does not allege any improper conduct on the part of EquityBee. Rather, SPM alleges that now-dismissed Defendant Witvoet, not EquityBee, had confidentiality obligations towards SPM and that Witvoet, not EquityBee, violated Witvoet's obligations by breaching his NDAs with SPM. (*Id.*, ¶ 35.) SPM does not allege that EquityBee was even on notice that SPM considered the terms of its investment vehicle to be a trade secret. *See Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 585 (2008) ("A person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information.").

Moreover, the FAC does not allege *any particular form of damage* from any alleged misappropriation.  Accordingly, the FAC should be dismissed for failure adequately to allege that EquityBee misappropriated the alleged Trade Secret or that SPM experienced any damages.

**V.     CONCLUSION**

EquityBee respectfully requests that the Court dismiss the FAC with prejudice.

DATED:  May 17, 2024                    THEODORA ORINGHER PC

                                                By:  _David C. Codell_____
                                                        David C. Codell
                                                        Maryam Arshad

                                                        William H. Wenke
                                                        Attorneys for EQUITYBEE, INC.